**GIBSON, DUNN & CRUTCHER LLP**
THEODORE J. BOUTROUS JR., SBN 132099
    tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
    rdoren@gibsondunn.com
DEBORAH L. STEIN, SBN 224570
    dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fac.: 213.229.7520

**ROBINSON & COLE LLP**
STEPHEN E. GOLDMAN
    sgoldman@rc.com
WYSTAN M. ACKERMAN
    wackerman@rc.com
*Motions for pro hac vice admission forthcoming*
280 Trumbull Street
Hartford, CT 06103
Tel.: 860.275.8200
Fac.: 860.275.8299

Attorneys for Defendant Travelers Property
Casualty Company of America (erroneously
named as The Travelers Indemnity Company)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEZ SEAFOOD DTLA, LLC, dba PEZ CANTINA and PEZ POWDER, a limited liability company,<br><br>                    Plaintiff,<br><br>          v.<br><br>THE TRAVELERS INDEMNITY COMPANY, a corporation; ERIC GARCETTI, an individual; and DOES 1 to 25, inclusive,<br><br>                    Defendants. | **CASE NO. 2:20-cv-04699-DMG-GJS**<br><br>**DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>**Hearing:**<br><br>Date:     July 10, 2020<br>Time:     9:30 a.m.<br>Place:    Courtroom 8C<br>          First Street Courthouse<br>          350 W. First Street<br>          Los Angeles, CA 90012<br>Judge:    Dolly M. Gee |

Gibson, Dunn &
Crutcher LLP

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................. 1

II. PROCEDURAL HISTORY AND ALLEGED FACTS ...................................... 2

    A. This Lawsuit ............................................................................. 2

    B. Contract Language At Issue ..................................................... 4

        1. The Relevant Coverage Provisions ................................. 4

        2. The Virus Exclusion ...................................................... 5

        3. The Claim Data Expense Coverage Provisions .............. 6

III. LEGAL STANDARD .......................................................................... 7

IV. ARGUMENT ...................................................................................... 8

    A. Pez Is Not Entitled to Civil Authority Coverage as a Matter of Law ........ 8

        1. Civil Authority Coverage Does Not Apply to Losses Caused By or Resulting From a Virus ............................. 9

        2. Civil Authority Coverage Does Not Apply Because the FAC Fails to Establish That the Orders "Prohibit[ed] Access" to Plaintiff's Premises ....................... 12

    B. Business Income and Extra Expense Coverage Similarly Does Not Apply as a Matter of Law ......................................... 15

    C. Plaintiff Is Not Entitled to Claim Data Expense Coverage as a Matter of Law ................................................................... 17

    D. Dismissal of the First Cause of Action Is Proper Because Pez Is Not Entitled to Any of Its Requested Declarations or Damages .................. 17

    E. Dismissal of the Second Cause of Action for Breach of Contract Is Proper Because Pez Fails to Allege Any Entitlement to Coverage ......... 19

    F. Dismissal of the Third Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Proper Because Pez Is Not Entitled to Coverage as a Matter of Law ........................... 20

V. CONCLUSION ................................................................................... 21

Gibson, Dunn & Crutcher LLP

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
    135 Cal. App. 4th 1008 (Ct. App. 2006) ................................................. 19

*54th St. Ltd. Partners v. Fid. & Guar. Ins. Co.*,
    763 N.Y.S.2d 243 (N.Y. App. Div. 2003) ............................................. 14

*730 Bienville Partners, Ltd. v. Assurance Co. of Am.*,
    67 F. App'x 248 (5th Cir. 2003) (unpublished) ..................................... 14

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
    308 F. Supp. 2d 331 (S.D.N.Y. 2004) .................................................. 14

*Amaral v. Wachovia Mortg. Corp.*,
    692 F. Supp. 2d 1226 (E.D. Cal. 2010) ................................................ 19

*Atlas Assurance Co. v. McCombs Corp.*,
    146 Cal. App. 3d 135 (Ct. App. 1983) ............................................ 10, 12

*Backroads Corp. v. Great Northern Insurance*,
    No. C 03-4615, 2005 WL 1866397 (N.D. Cal. Aug. 1, 2005) ................ 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................... 7

*Boza v. U.S. Bank Nat'l Ass'n*,
    No. LA CV12-06993 JAK, 2013 WL 5943160 (C.D. Cal. Oct. 28,
    2013) ................................................................................................... 20

*Brown v. Mid-Century Ins. Co.*,
    215 Cal. App. 4th 841 (Ct. App. 2013) ............................................... 20

*By Dev., Inc. v. United Fire & Cas. Co.*,
    No. CIV. 04-5116, 2006 WL 694991 (D.S.D. Mar. 14, 2006), *aff'd*,
    206 F. App'x 609 (8th Cir. 2006) ........................................................ 15

*Certain Underwriters at Lloyd's of London v. Creagh*,
    Civ. A. No. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013), *aff'd*,
    563 F. App'x 209 (3d Cir. 2014) ......................................................... 10

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

ii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Certain Underwriters at Lloyd's of London v. Superior Court*,
   24 Cal. 4th 945 (Cal. 2001) ............................................. 8

*Clarke v. State Farm Fla. Ins.*,
   123 So. 3d 583 (Fla. Dist. Ct. App. 2012)............................ 11

*Commstop, Inc v. Travelers Indemn. Co. of Conn.*,
   No. 11-cv-1257, 2012 WL 1883461 (W.D. La. May 12, 2012)............... 15

*Cont'l Cas. Co. v. City of Richmond*,
   763 F.2d 1076 (9th Cir. 1985) ........................................ 8

*Doe v. State Farm Fire & Cas. Co.*,
   No. 2015-0136, 2015 WL 11083311 (N.H. Sept. 21, 2015) ............... 10

*Fireman's Fund Ins. Co. v. Superior Court*,
   65 Cal. App. 4th 1205 (Ct. App. 1997) .............................. 10

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ..................................... 3, 9

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l
   Fire Ins. Co. of Hartford*,
   No. CIV. A. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ...... 15

*Lambi v. Am. Family Mut. Ins. Co.*,
   498 F. App'x 655 (8th Cir. 2013).................................... 11

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) (en banc) ............................. 7

*Love v. Fire Ins. Exch.*,
   221 Cal. App. 3d 1136 (Ct. App. 1990) ....................... 2, 19, 20

*Marzec v. Cal. Pub. Emps. Ret. Sys.*,
   236 Cal. App. 4th 889 (Ct. App. 2015) ............................. 8, 12

*McKnight v. Torres*,
   563 F.3d 890 (9th Cir. 2009) ....................................... 20

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

iii

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Minich v. Allstate Ins. Co.*,
193 Cal. App. 4th 477 (Ct. App. 2011) ................................................. 20

*Moss v. Infinity Ins. Co.*,
No. 15-CV-03456-JSC, 2015 WL 7351395 (N.D. Cal. Nov. 20, 2015) ................. 21

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ............................................................. 7

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
187 Cal. App. 4th 766 (Ct. App. 2010) ............................................... 16

*Native Vill. of Noatak v. Blatchford*,
38 F.3d 1505 (9th Cir. 1994), *overruled on other grounds by Bd. of
Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th
Cir. 2019) .......................................................................... 18

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ............................................................ 7

*O'Keefe v. Allstate Indem. Co.*,
953 F. Supp. 2d 1111 (S.D. Cal. 2013) ............................................... 21

*Palmer v. Truck Ins. Exch.*,
21 Cal. 4th 1109 (Cal. 1999) ....................................................... 8, 10

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
No. 1:03-CV-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) ................. 14

*Pez Seafood DTLA, LLC, v.Travelers Indemnity Co.*,
No. 20-cv-4699 (C.D. Cal. May 27, 2020) .............................................. 1

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
385 F. Supp. 2d 280 (S.D.N.Y. 2005) ................................................. 14

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
752 F.3d 807 (9th Cir. 2014) .......................................................... 20

Gibson, Dunn &
Crutcher LLP

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

iv

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*R. L. H., III by & through Hunter v. United Servs. Auto. Ass'n,*
   No. EDCV 07-942-VAP, 2008 WL 11336180 (C.D. Cal. Apr. 10,
   2008), *aff'd sub nom. R.L.H. ex rel. Hunter v. United Servs. Auto.
   Ass'n*, 327 F. App'x 714 (9th Cir. 2009) ................................................. 19

*Roug v. Ohio Sec. Ins. Co.,*
   182 Cal. App. 3d 1030 (Ct. App. 1986) ...................................................... 8

*S. Hospitality, Inc. v. Zurich Am. Ins.,*
   393 F.3d 1137 (10th Cir. 2004) ......................................................... 13, 14

*Safeco Ins. Co. v. Gilstrap,*
   141 Cal. App. 3d 524 (Ct. App. 1983) ........................................................ 8

*Sekera v. Allstate Ins. Co.,*
   763 F. App'x 629 (9th Cir. 2019) .............................................................. 20

*Shathaia v. Travelers Cas. Ins. Co. of Am.,*
   984 F. Supp. 2d 714 (E.D. Mich. 2013) ................................................... 18

*Sigma Fin. Corp. v. Gotham Ins. Co.,*
   No. SACV 15-01531 AG, 2017 WL 9511732 (C.D. Cal. Mar. 31,
   2017) .......................................................................................................... 21

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.,*
   No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) ........... 15

*Syufy Enters. v. Home Ins. Co. of Indiana*
   1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ........................................... 13

*Turner v. City & Cty. of San Francisco,*
   788 F.3d 1206 (9th Cir. 2015) .................................................................... 7

*Waller v. Truck Ins. Exch., Inc.,*
   11 Cal. 4th 1 (Cal. 1995) .......................................................................... 20

*Welles v. Turner Entm't Co.,*
   503 F.3d 728 (9th Cir. 2007) ...................................................................... 7

Gibson, Dunn &
Crutcher LLP

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

v

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   255 F. Supp. 3d 970 (N.D. Cal. 2017)..........................................................................7

**Statutes**

Cal. Civ. Code § 1638.................................................................................................8, 10

Cal. Civ. Code § 1646......................................................................................................7

**Other Authorities**

Kornblum et al., Cal. Practice Guide: Bad Faith § 4:28.................................................19

**Rules**

Fed. R. Civ. P. 10(c) ....................................................................................................3, 9

Gibson, Dunn &
Crutcher LLP

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

vi

1    Travelers Property Casualty Company of America ("Travelers"), erroneously

2    sued as The Travelers Indemnity Company, hereby submits this memorandum of

3    points and authorities in support of its Motion to Dismiss.

4    **I.      INTRODUCTION**

5            The COVID-19 pandemic has affected the public and most businesses

6    throughout the country in unprecedented ways.  But these challenging and unfortunate

7    circumstances do not create insurance coverage for losses that fall outside the terms of

8    a policyholder's insurance contract.

9            Plaintiff ("Plaintiff" or "Pez") asks this Court to declare that Pez is entitled to

10   insurance coverage for the restaurant's claimed business income losses allegedly

11   caused by Mayor Eric Garcetti's various executive orders and Health Officer Muntu

12   Davis's March 16, 2020 stay-at-home order (the "Orders") issued to combat the spread

13   of the COVID-19 pandemic.  But Pez ignores the material terms of its Travelers

14   insurance policy—foremost among them an explicit exclusion of *any* type of coverage,

15   including Civil Authority coverage, for *any* "loss or damage resulting from any virus,

16   bacterium or other microorganism that induces or is capable of inducing physical

17   distress, illness or disease."

18           In addition to the case-dispositive virus exclusion, Plaintiff has not and cannot

19   plead the facts necessary to establish that it is entitled to Civil Authority coverage,

20   Business Income coverage, Claim Expense coverage, or any of the derivative

21   declarations that Plaintiff seeks.  The First Amended Complaint ("FAC") fails, as a

22   matter of law, for at least three other reasons.

23           First, Pez fails to allege facts demonstrating that the Orders "prohibited access"

24   to its premises, a prerequisite for Civil Authority coverage, only asserting that one of

25   the orders "included the prohibition of dine-in food service."  FAC ¶ 22.  Courts

26   nationwide have repeatedly held that to "prohibit access" requires that government

27   authorities completely prevent access to the premises.

28

Gibson, Dunn &
Crutcher LLP

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

Second, Pez fails to allege facts demonstrating that it suffered a "direct physical loss of or damage to [the insured] property," which Business Income coverage requires.

Third, Pez fails to allege that it incurred "reasonable expenses" preparing claim data, let alone that Travelers "required such data," as Claim Data Expense coverage requires.

And, again, even if Pez could have pled these factual requirements for coverage, Pez's insurance claim—which results from the Coronavirus—would still be *expressly excluded* by the virus exclusion.[1]  The FAC should be dismissed with prejudice because, as a matter of law, Pez cannot plead an entitlement to coverage under its contract with Travelers.

## II.    PROCEDURAL HISTORY AND ALLEGED FACTS

### A.    This Lawsuit

Plaintiff commenced this action on April 20, 2020, in Los Angeles Superior Court, against The Travelers Indemnity Company and Los Angeles County Health Officer Muntu Davis.[2]  Plaintiff filed its First Amended Complaint on May 20, 2020. *See* FAC (attached to Notice of Removal), Dkt. 1-2.  Plaintiff operates a restaurant known as Pez Cantina in downtown Los Angeles.  FAC ¶ 12.  Plaintiff alleges that a Travelers insurance policy number 680-9M304995 (the "Policy") insures "loss of

---

[1]  Because Pez cannot plead facts to establish coverage, its claims for breach of contract and bad faith, premised on the wrongful denial of coverage, likewise fail as a matter of law.  "[A]bsent an actual withholding of benefits due, there is no breach of contract and likewise no breach of the insurer's implied covenant."  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 n.10 (Ct. App. 1990) (internal citation omitted).

[2]  Health Officer Davis is neither a party to the insurance contract at issue nor does he have any rights or obligations under that contract.  As explained in the Notice of Removal, Health Officer Davis was fraudulently joined in this lawsuit and the Court should disregard his citizenship and assert its subject matter jurisdiction over this action.

Gibson, Dunn & Crutcher LLP

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss

2

business income" "caused by" Mayor Garcetti's various executive orders and Health Officer Davis's March 16, 2020 stay-at-home order relating to the "COVID-19 pandemic." *Id.* ¶¶ 2, 10–28. The Policy, included as an exhibit to the FAC, was issued by Travelers Property Casualty Company of America. *See id.*, Ex. 1.[3]

According to the FAC, on March 15, 2020, Mayor Garcetti issued an Order "placing restrictions on certain establishments throughout the City of Los Angeles," "includ[ing] the prohibition of dine-in service." FAC ¶ 22. The Order, attached as Exhibit 2 to the FAC, specifically permits restaurants to prepare and sell food for takeout and delivery. FAC, Ex. 2, ¶ 3; *see also* FAC, Ex. 3, ¶ 5(vii)(m) (same); FAC, Ex. 4, ¶ 5(vii)(m) (same); FAC, Ex. 5, ¶ 3 (same). The FAC alleges that Los Angeles' Orders were "reasonably necessary to protect the public good, welfare, and benefit," and "specifically tailored to the nature of the COVID-19 pandemic." FAC ¶ 26. Further, Health Officer Davis's March 16, 2020 stay-at-home order "direct[ed] all individuals living in the county to stay at home except that they may leave to provide or receive certain essential services or engage in certain essential activities." *Id.* ¶ 25. Although Mayor Garcetti's Order permitted restaurants to operate for purposes of takeout and delivery service, Plaintiff alleges that "[a]s a result of the Orders Plaintiff has had to completely shut down its business operations and access to the insured property is specifically prohibited." *Id.* ¶ 27. Finally, the FAC alleges that Travelers denied Plaintiff's "claim as not being covered by The Policy." *Id.* ¶ 30.

Plaintiff seeks coverage for "business income and additional expenses." FAC ¶ 29. The FAC frames four purported insurance coverage issues for which Plaintiff seeks declaratory judgment: (1) "that the necessary suspension of Plaintiff's business operations caused by the Orders constitute a direct physical loss as defined in the

---

[3] An exhibit attached to a complaint "is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), and may be considered on this motion to dismiss. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018).

Gibson, Dunn & Crutcher LLP

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss

3

Policy"; (2) "that the Orders constitute a prohibition of access to Plaintiff's Insured Premises by a Civil Authority as defined in the Policy"; (3) "that the Orders trigger coverage under the Policy if Plaintiff can prove that there has been a direct physical loss of or damage to the property"; and (4) "that claim expense coverage is available in the amount of $25,000 for making a claim under the Policy." *Id.*, Prayer for Relief ¶¶ 1–4.

### B.    Contract Language At Issue

#### 1.    The Relevant Coverage Provisions

Plaintiff purchased a Restaurant PAC Plus Policy from Travelers, a policy that insures Plaintiff's property from covered causes of loss, such as a fire or windstorm. Consider a fire that requires a suspension of business operations. The Policy would cover lost business income or increased expenses resulting from the suspension of operations caused by the fire and occurring while the repairs are being made—the "period of restoration." Plaintiff's Business Income and Extra Expense coverage provides, in relevant part:

**a.    Business Income**

. . .

**(2)**   We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

. . .

**b.    Extra Expense**

**(1)**   Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not

Gibson, Dunn & Crutcher LLP

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss

4

have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

FAC, Ex. 1 at 117–18.[4]  "Covered Causes of Loss" are "risks of direct physical loss unless the loss is . . . [e]xcluded."  *Id.* at 118–19 (caps and bold omitted).

In the provision entitled "Civil Authority," which is the focal point of the FAC, coverage for Business Income and Extra Expense resulting from a "Covered Cause of Loss" is extended to:

the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by <u>action of civil authority that prohibits access to the described premises</u>. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises, <u>caused by or resulting from a Covered Cause of Loss</u>.

FAC, Ex. 1 at 130 (underscores added).  As highlighted, two key requirements for this coverage to apply are: (i) a civil authority action must "prohibit" access to the insured's premises, and (ii) the action must be due to physical property loss or damage "caused by or resulting from a Covered Cause of Loss" (i.e., a cause that is not excluded from coverage).

### 2.    The Virus Exclusion

The Policy contains an endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which "applies to all coverage under all forms and endorsements that comprise" the Commercial Property Coverage Part of the Policy

---

[4]  The Policy, Exhibit 1 to the FAC, is pin cited in accordance with the "Travelers Doc Mgmt" pagination at the bottom of each page.  For example, "FAC, Ex. 1 at 1" corresponds to "Travelers Doc Mgmt 1 of 395."

Gibson, Dunn & Crutcher LLP

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss

5

"including but not limited to forms or endorsements that cover . . . business income, extra expense, rental value or action of civil authority."  FAC, Ex. 1 at 284 (bold omitted).  The exclusion states in plain terms:

> <u>We will not pay for loss or damage caused by or resulting from any virus</u>, bacterium or other microorganism <u>that induces or is capable of inducing physical distress, illness or disease</u>.

*Id.* (underscores added).

### 3.   The Claim Data Expense Coverage Provisions

The Policy's "Businessowners Property Coverage Special Form" includes Claim Data Expense coverage, for which the grant of coverage provides, in relevant part:

> (1) We will pay the reasonable expenses <u>you incur</u> in preparing claim data <u>when we require such data</u> to show the extent of loss. This includes the cost of taking inventories, making appraisals, preparing income statements, and preparing other documentation.
>
> (2) Under this Additional Coverage, <u>we will not pay for</u>:
>
> > (a) <u>Any expenses incurred, directed, or billed by or payable to attorneys, insurance adjusters or their associates or subsidiaries</u>;
> >
> > (b) Any costs in connection with Paragraph E, 2., Appraisal; or
> >
> > (c) Any expenses incurred, directed, or billed by or payable to insurance brokers or agents, or their associates or subsidiaries, without our written consent prior to such expenses being incurred.
>
> (3) The most we will pay for preparation of claim data under this Additional Coverage in any one occurrence is $5,000 regardless of the number of premises involved.[5]

FAC, Ex. 1 at 120 (underscores added).

---

[5]  The Restaurant and Perishable Goods Premier Endorsement to the Policy increases the Claim Data Expense policy limit from $5,000 to $25,000.  FAC, Ex. 1 at 56 ¶ 4.

Gibson, Dunn & Crutcher LLP

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss

6

## III.   LEGAL STANDARD

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must "state a claim to relief that is plausible on its face."). Although "a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party," *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015), dismissal is warranted when "the complaint [] [can]not be saved by any amendment," *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (quotation marks omitted). If a complaint fails to state a plausible claim, a district court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quotation marks omitted).

Under California law,[6] the terms of an insurance policy must be given their "ordinary and popular sense," and "[i]f the policy language 'is clear and explicit, it governs.'" *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115–17 (Cal. 1999) (quotation marks omitted); Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."). Indeed, "[a]n insurance policy is but a contract; and, like all other contracts it must be construed from the language used; when the terms are plain and

---

[6] California law applies here because the parties are before the Court in diversity and thus the forum state's choice-of-law principles apply. *Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th Cir. 2007); *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 255 F. Supp. 3d 970, 973 n.1 (N.D. Cal. 2017). Under California law, a "contract is to be interpreted according to the law and usage of the place where it is to be performed; or . . . where it is made." Cal. Civ. Code § 1646. Because the Policy here concerns rights and responsibilities with respect to property in California, California law governs. *See Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir. 1985).

Gibson, Dunn &
Crutcher LLP

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

7

unambiguous, it is the duty of courts to enforce the agreement." *Roug v. Ohio Sec. Ins. Co.*, 182 Cal. App. 3d 1030, 1035 (Ct. App. 1986) (quotation marks omitted). Moreover, courts may not "rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Safeco Ins. Co. v. Gilstrap*, 141 Cal. App. 3d 524, 533 (Ct. App. 1983); *see also Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 968 (Cal. 2001) ("[W]e do not rewrite any provision of any contract, including the [insurance policy at issue], for any purpose."). If a complaint "place[s] a clearly erroneous construction upon the provisions of the contract," that construction should be rejected and the complaint dismissed. *Marzec v. Cal. Pub. Emps. Ret. Sys.*, 236 Cal. App. 4th 889, 909 (Ct. App. 2015) (quotation marks omitted).

## IV.   ARGUMENT

The facts pleaded in the FAC demonstrate as a matter of law that Pez cannot prove an entitlement to coverage under the Policy.  Indeed, the FAC seeks coverage for losses that Pez alleges were caused by the Orders "specifically tailored to the nature of the COVID-19 pandemic"—an outbreak of disease caused by a virus—yet, as previously described, the Policy contains an explicit exclusion of *any* type of property coverage, including Civil Authority coverage, for *any* "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  FAC ¶¶ 28, 26; FAC, Ex. 1 at 284.  For this reason alone, the FAC's three causes of action regarding coverage should be dismissed with prejudice.

### A.   Pez Is Not Entitled to Civil Authority Coverage as a Matter of Law

Civil Authority coverage insures certain business losses and expenses "caused by action of civil authority" that are "due to direct physical loss of or damage to property . . . *caused by or resulting from a Covered Cause of Loss*."  FAC, Ex. 1 at 130 (emphasis added).  Again, the Policy explicitly excludes losses "resulting from any

virus" from its Covered Causes of Loss.  Moreover, the "action of civil authority" must "*prohibit[] access* to the described premises" for there to be any potential of coverage, and Plaintiff points at most to a limited-use restriction.  *Id.* (emphasis added).  Because Plaintiff's allegations fail to satisfy either element, dismissal is warranted as to Plaintiff's requests regarding this coverage.

## 1. Civil Authority Coverage Does Not Apply to Losses Caused By or Resulting From a Virus

Pursuant to the Policy's express terms, an "action of civil authority" can *only* give rise to coverage if, among other things, the action is taken due to physical loss or damage "*caused by or resulting from a Covered Cause of Loss*."  FAC, Ex. 1 at 130 (emphasis added).  And as a matter of logic as well as explicit policy language, an *excluded* risk of loss is *not* a Covered Cause of Loss.

The FAC casts COVID-19 as the "Covered Cause of Loss" for civil authority coverage.  It is plain from the face of the FAC and exhibits thereto that the civil authority action—the Orders—were issued due to COVID-19.  Plaintiff alleges that "[t]he Orders were specifically tailored to the nature of the COVID-19 pandemic." FAC ¶ 26.  The Orders, attached as exhibits to the FAC,[7] repeatedly and consistently refer to the "COVID-19 virus" and the need to slow the spread of the virus.  *See, e.g.*, FAC, Ex. 2 at 1; FAC, Ex. 3 at 1; FAC, Ex. 4 at 1; FAC, Ex. 5 at 1 & ¶¶ 6–8, 12.  The losses alleged, therefore, are caused by or result from the Coronavirus and fall squarely within the Policy's broad exclusion of "loss or damage *caused by or resulting from any virus*, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  FAC, Ex. 1 at 284 (emphasis added).  And the virus exclusion expressly applies to civil authority coverage.  *Id.* ("The exclusion . . . applies

---

[7]  Again, an exhibit attached to a complaint "is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), and may be considered on this motion to dismiss. *Hicks*, 897 F.3d at 1117.

Gibson, Dunn & Crutcher LLP

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss

9

to . . . forms or endorsements that cover business income, extra expense, rental value or *action of civil authority*." (emphasis added)).

California law instructs that when the language of a policy "is clear and explicit," as it is here, the language governs. *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (Cal. 1999) (quotation marks omitted); Cal. Civ. Code § 1638. California courts evaluating policy exclusions foreclosing coverage for losses "caused by or resulting from" specified noncovered risks have found the provisions unambiguous and applied their plain meaning. *See, e.g.*, *Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 149 (Ct. App. 1983); *see also Fireman's Fund Ins. Co. v. Superior Court*, 65 Cal. App. 4th 1205, 1212–13 (Ct. App. 1997) (a court "will not strain to create an ambiguity where none exists or indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage where none was contemplated").[8]

There is no question that the plain language of the virus exclusion controls here. The FAC takes great pains to avoid using the term "virus," referencing the pandemic

---

[8] While few courts have had occasion to construe a virus or microorganism exclusion, courts have enforced them in accordance with their clear and unambiguous language. *See, e.g.*, *Certain Underwriters at Lloyd's of London v. Creagh*, Civ. A. No. 12-571, 2013 WL 3213345, at *3 (E.D. Pa. June 26, 2013) (quotation marks omitted) (holding that exclusion for "any loss . . . arising out of or relating to . . . [a] microorganism of any type" precluded coverage for damage to bathroom caused by bacteria from dead body), *aff'd*, 563 F. App'x 209 (3d Cir. 2014); *Doe v. State Farm Fire & Cas. Co.*, No. 2015-0136, 2015 WL 11083311, at *2 (N.H. Sept. 21, 2015) ("We conclude that a reasonable person in the position of the insured, based upon more than a casual reading of the policy as a whole, would understand the policy to exclude all diseases and viruses that can be transmitted from one person to another."); *Lambi v. Am. Family Mut. Ins. Co.*, 498 F. App'x 655, 656 (8th Cir. 2013) ("[T]he policy excluded bodily injury arising out of the actual or alleged transmission of a communicable disease, and infecting another with the HIV virus clearly falls within the plain and ordinary meaning of the transmission of a communicable disease."); *Clarke v. State Farm Fla. Ins.*, 123 So. 3d 583, 584 (Fla. Dist. Ct. App. 2012) (similar result, finding exclusion unambiguous).

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss

10

only as "COVID-19" and splicing Mayor Garcetti's revised order.  FAC ¶ 23.  Plaintiff alleges that the "Revised Order specifically acknowledges that COVID-19 is 'physically causing property loss or damage . . . .'"  *Id*.  But the full sentence from the Order states:

> This Order is given because, among other reasons, the COVID-19 <u>virus</u> can spread easily from person to person and it is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time.

FAC, Ex. 3 at 1 (underscore added).  The FAC acknowledges that COVID-19 is "an unprecedented . . . world pandemic."  FAC ¶ 20.  And, as noted above, the Orders attached as exhibits to the FAC repeatedly refer to the COVID-19 virus as the reason for their issuance.  *See, e.g.*, FAC, Ex. 5, ¶ 6 ("This Order is based upon scientific evidence and best practices, as currently known and available, to protect members of the public from avoidable risk of serious illness and death resulting from the spread of COVID-19, as well as to protect the healthcare system from a surge of cases into its emergency rooms and hospitals.").  COVID-19 therefore falls squarely within the scope of the virus exclusion and cannot give rise to Civil Authority coverage.

Nonetheless, Plaintiff explicitly requests declarations that coverage would exist for losses caused by or resulting from Los Angeles' COVID-19 Orders.  FAC, Prayer for Relief.  To grant Plaintiff's request would "strain[] reason" and require "precisely the opposite" of the plain meaning of the virus exclusion, which unambiguously precludes coverage for any loss "caused by or resulting from" a virus.  *See Atlas Assurance*, 146 Cal. App. 3d at 149.  Such a result would effectively "rewrite" the Policy and improperly bind Travelers "to a risk that it did not contemplate and for which it has not been paid."  *Id.* (quotation marks omitted); *Marzec*, 236 Cal. App. 4th at 909–10 ("The fundamental goal of contract interpretation is to give effect to the

mutual intention of the parties as it existed at the time they entered into the contract.")
(quotation marks omitted).

Because Plaintiff's construction of the Policy requires that the virus exclusion be
ignored, it is "clearly erroneous" and unreasonable, and dismissal is warranted on this
basis. *Marzec*, 236 Cal. App. 4th at 909 (when the insured "place[s] a clearly
erroneous construction upon the provisions of the contract," that construction cannot
be accepted and the complaint should be dismissed (quotation marks omitted)).

> ### 2.   Civil Authority Coverage Does Not Apply Because the FAC Fails to Establish That the Orders "Prohibit[ed] Access" to Plaintiff's Premises

Independently, Pez's allegations also fail to establish Civil Authority coverage
because the FAC acknowledges the Orders did not fully "prohibit access" to the
described premises, Plaintiff's restaurant. While Plaintiff alleges that it "has had to
completely shut down its business operations and access to the insured property is
specifically prohibited," Plaintiff admits that the Orders in question prohibit only
restaurants' "dine-in food service" and continue to permit travel for both "provid[ing]
and receiv[ing]" "essential services" and "essential activities." FAC ¶¶ 27, 22, 25.
Plaintiff does not allege that delivery and pick-up services are inhibited. And the
Orders attached to the FAC confirm that restaurants are permitted to prepare and sell
food for delivery and pickup. FAC, Ex. 2, ¶ 3; FAC, Ex. 3, ¶ 5(vii)(m); FAC, Ex. 4,
¶ 5(vii)(m); FAC, Ex. 5, ¶ 3. The FAC thus does not satisfy the requirements for
coverage under the plain language of the Policy.

Courts interpreting civil authority provisions uniformly require the phrase
"prohibit access" to mean to "formally forbid" or "prevent" any access to the premises.
*See, e.g.*, *S. Hospitality, Inc. v. Zurich Am. Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004)
(quotation marks omitted). A voluntary closure or limitations restricting access are not
sufficient. For example, in *Syufy Enters. v. Home Ins. Co. of Ind.*, the district court

Gibson, Dunn &
Crutcher LLP

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

12

addressed civil authority coverage for businesses affected by "dawn-to-dusk" curfews imposed by cities during the Rodney King riots.  No. 94-0756, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995).  A movie theater operator cancelled showings during the curfew period, presumably because customers could not attend.  *Id.* at *1.  Although the orders caused the insured's business to suffer, coverage was not implicated because the orders did not "deny access to a Syufy theater" or "prohibit[] any individual from entering a theater."  *Id.* at *2.  That the insured "opted to close its theaters" as a result of the curfews did not satisfy the policy language.  *Id.*

Civil authority coverage cases in California and elsewhere after the September 11, 2001 terrorist attacks reinforced this distinction between orders that "prohibit access" to an insured premises and those that otherwise affect an insured's business, or only limit certain services.  In *Backroads Corp. v. Great Northern Insurance*, No. C 03-4615, 2005 WL 1866397 (N.D. Cal. Aug. 1, 2005), after the FAA grounded domestic air traffic in the days following September 11, the court rejected a vacation tour operator's claim for civil authority coverage for trip reimbursements to customers.  Although the orders prevented customers from utilizing their vacation packages and caused the insured's business to suffer, there was no coverage because "the FAA's order did not prohibit access to [the insured]'s premises[.]"  *Id.* at *6.  Courts across the country similarly rejected attempts by hotels, airport parking garages, and even airport gift shops to claim coverage for losses incurred as a result of the FAA orders because they did not "prohibit access" to the various businesses.  *See S. Hospitality*, 393 F.3d at 1140 ("The FAA order prohibited access to airplane flights; it did not prohibit access to hotel operations."); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished) ("[T]he generally prevailing meaning of 'prohibit' is . . . 'to forbid by authority or command,'" and "[i]t is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F.

Gibson, Dunn &
Crutcher LLP

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

13

Supp. 2d 280, 289 (S.D.N.Y. 2005) (While the order "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage[.]"); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores). Likewise, while post-September 11th orders closing lower Manhattan businesses in the days following the attacks "prohibited access" to businesses, subsequent "vehicular traffic prohibitions" were insufficient to trigger coverage even though they "restrain[ed] . . . normal operating procedures" for businesses. *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335–36 (S.D.N.Y. 2004); *see also 54th St. Ltd. Partners v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d 243, 244 (N.Y. App. Div. 2003).

On their faces, and even as described by Pez in the FAC, the Orders do not prohibit access to Plaintiff's premises: the Orders prohibit only dine-in service, allow restaurant takeout and delivery service, and expressly allow individuals to travel to "provide or receive certain essential services or engage in certain essential services." FAC ¶¶ 22, 25; FAC, Ex. 2, ¶ 3; FAC, Ex. 3, ¶ 5(m); FAC, Ex. 4(vii), ¶ 5(m)(vii); FAC, Ex. 5, ¶ 3. The Policy, however, requires that an applicable order "prohibit" access, not limit access. Courts uniformly hold that this language requires that an order "completely prohibit[] access"—not "merely hinder[] access"—to implicate coverage. *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *4–5 (M.D. Pa. July 6, 2010) (no coverage when an order closed the main road to a ski resort, but another road was available to 30% of patrons); *see also Commstop, Inc v. Travelers Indemn. Co. of Conn.*, No. 11-cv-1257, 2012 WL 1883461, at *9 (W.D. La. May 12, 2012) (coverage only applies where access is "totally and completely prevented—*i.e.*, made impossible" by the civil authority

action); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. CIV. A. 06-770-C, 2007 WL 2489711, at *4 (M.D. La. Aug. 29, 2007) (no coverage when order "encouraged" residents to stay off streets before hurricane, because it did not "*actually* and *completely* prohibit[] access"); *By Dev., Inc. v. United Fire & Cas. Co.*, No. CIV. 04-5116, 2006 WL 694991, *5 (D.S.D. Mar. 14, 2006), *aff'd*, 206 F. App'x 609 (8th Cir. 2006). Plaintiff has not and cannot allege that the Orders "completely prohibited" access to its restaurant when only "dine-in" service was impacted. FAC ¶ 22.

Thus, as a matter of law, Plaintiff is not entitled to a declaration establishing Civil Authority coverage under the Policy because the FAC does not allege (1) physical loss or damage to property "caused by or resulting from a Covered Cause of Loss" in light of the virus exclusion; and (2) that the Orders "prohibited access" to Plaintiff's premises. Amendment cannot cure these defects because the lawsuit is premised on purported "damage" allegedly caused by the Coronavirus and the terms of the Orders, neither of which can be altered by amendment.

## B. Business Income and Extra Expense Coverage Similarly Does Not Apply as a Matter of Law

The gravamen of the FAC addresses Civil Authority coverage. Yet Plaintiff also states that the Policy "applies to the actual loss of business income sustained and necessary and reasonable extra expenses incurred when the operations of the business are suspended due to the direct physical loss of or damage to the Inured Premises that is not excluded or limited." FAC ¶ 16. These claims also fail as a matter of law.

The Policy provides coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiff's] 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the described premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." FAC, Ex. 1 at 117–18. The Extra Expense coverage similarly

requires "direct physical loss of or damage to property . . . caused by or result[ing] from a Covered Cause of Loss." *Id.* at 118.  Although the FAC includes a nonspecific allegation regarding the Coronavirus causing physical loss or damage generally (*see* FAC ¶ 23 (quoting Mayor Garcetti's revised order that COVID-19 is "physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time")), Plaintiff never claims to have suffered any direct physical loss or damage to Plaintiff's property at the insured premises.[9]  In fact, Plaintiff defines its "loss" exclusively as "loss of business income and additional expenses." *Id.* ¶ 29. Because Plaintiff does not allege direct physical loss of or damage to the described premises, dismissal is warranted on this basis alone.

But even if Plaintiff had alleged direct physical loss of or damage to property at the insured premises, there is no Business Income or Extra Expense coverage for the same reason that there is no Civil Authority coverage:  a virus is not a Covered Cause of Loss.  The virus exclusion expressly applies to Business Income and Extra Expense coverage.  FAC, Ex. 1 at 284 ("The exclusion . . . applies to . . . forms or endorsements that cover *business income, extra expense*, rental value or action of civil authority" (emphasis added)).  Plaintiff's only allegations of physical loss or damage to property are those "caused by the Orders," which "were specifically tailored to the nature of the COVID-19 pandemic."  FAC ¶¶ 28, 26.  As even Plaintiff's characterizations of the Policy's business income and civil authority coverage admit, the provisions are in some instances "excluded or limited." *Id.* ¶¶ 16, 17.  The Coronavirus is precisely

---

[9]  Because of the virus exclusion, to grant Travelers' motion, the Court need not address whether COVID-19 causes "direct physical loss or damage" to property under the Policy.  In any event, to the extent that Plaintiff claims that the impact of the Orders on Plaintiff's business "constitute[s] a direct physical loss as defined in The Policy," FAC ¶ 33, that is incorrect as a matter of law because California courts require "a distinct, demonstrable, *physical alteration* of the property." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Ct. App. 2010) (quotation marks omitted; emphasis added).  This is another reason why Pez's claims fail as a matter of law.

Gibson, Dunn & Crutcher LLP

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss

16

such an exclusion.  The Policy precludes Business Income and Extra Expense coverage claimed on this basis.  Thus, as a matter of law, Plaintiff's FAC premised on the Coronavirus cannot trigger Business Income and Extra Expense coverage.

### C.    Plaintiff Is Not Entitled to Claim Data Expense Coverage as a Matter of Law

Finally, Plaintiff contends that claim expense coverage is available merely for making a claim, and requests a declaration to that end.  *See* FAC, Prayer for Relief.  Plaintiff's request for declaratory relief regarding claim expense coverage disregards every aspect of the pertinent provision.  At the outset, Plaintiff fails to state a claim for claim data expense coverage because Plaintiff makes no claim that it has "incur[red]" any expenses "preparing claim data"—let alone "reasonable expenses"—and Plaintiff makes no claim that Travelers has "require[d] such data."  FAC, Ex. 1 at 120.  Because Plaintiff does not make a claim under the defining terms of the provision, there can be no relief.

While not asserted in its FAC, even to the extent Plaintiff would endeavor to contend that its costs bringing this lawsuit are covered, the plain terms of the Claim Data Expense provision again say otherwise.  The provision states, "we will not pay for: (a) Any expenses incurred, directed, or billed by or payable to attorneys, insurance adjusters or their associates or subsidiaries."  FAC, Ex. 1 at 120.  Plaintiff therefore has no rightful claim to any such expenses.  *See, e.g.*, *Shathaia v. Travelers Cas. Ins. Co. of Am.*, 984 F. Supp. 2d 714, 727–28 (E.D. Mich. 2013) (granting summary judgment to Travelers on an insured's claim for attorney fees and public adjuster fees under identical policy language, under Michigan law).

### D.    Dismissal of the First Cause of Action Is Proper Because Pez Is Not Entitled to Any of Its Requested Declarations or Damages

Because Plaintiff cannot demonstrate as a matter of law that it is entitled to coverage under the Policy's Civil Authority, Business Income, Extra Expense or Claim

Gibson, Dunn & Crutcher LLP

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss                17

Data Expense provisions, Plaintiff is not entitled to any of the declarations it seeks. Plaintiff has specifically requested four declarations pertaining to aspects of business income, civil authority, or claim expense coverage under the Policy.  FAC, Prayer for Relief.  As discussed above, Plaintiff has failed to state a claim that impact of the Orders on Plaintiff's business constituted "direct physical loss as defined in the Policy" (the first declaration); that the Orders "prohibit[ed] . . . access to Plaintiff's [i]nsured [p]remises" in any way triggering coverage under the civil authority provision of the Policy (the second declaration); that "the Orders trigger coverage under The Policy if Plaintiff can prove there has been a direct physical loss of or damage to the property" (the third declaration); or that "claim expense coverage is available" where Plaintiff does not allege that Travelers required Plaintiff to prepare claim data (the fourth declaration).  *Id.*  Thus, no cognizable legal theory or set of facts has been alleged to sustain any of the declarations.

Indeed, because Plaintiff has failed to plausibly allege that it is entitled to a declaration of coverage, the Court can dismiss all other derivative declarations as moot.  *See Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994) ("The district court . . . may grant declaratory relief only when there is an actual case or controversy; a declaratory judgment may not be used to secure judicial determination of moot questions."), *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019); *see also Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226, 1236 & n.3 (E.D. Cal. 2010) (dismissing two of three requested declarations in part because "a determination as to whether Plaintiffs [were] entitled to the third requested declaration [would] involve an analysis of the issues surrounding the first two with no need for separate declarations on all three matters").

Gibson, Dunn & Crutcher LLP

Defendant Travelers Property Casualty Company of America's Memorandum of Points and Authorities in Support of Motion to Dismiss

18

**E.    Dismissal of the Second Cause of Action for Breach of Contract Is Proper Because Pez Fails to Allege Any Entitlement to Coverage**

"[A]bsent an actual withholding of benefits due, there is no breach of contract." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 n.10 (Ct. App. 1990) (quoting Kornblum et al., Cal. Practice Guide: Bad Faith § 4:28, pp. 4-9; emphasis omitted); *see also R. L. H., III by & through Hunter v. United Servs. Auto. Ass'n*, No. EDCV 07-942-VAP, 2008 WL 11336180, at *6 (C.D. Cal. Apr. 10, 2008), *aff'd sub nom. R.L.H. ex rel. Hunter v. United Servs. Auto. Ass'n*, 327 F. App'x 714 (9th Cir. 2009) (affirming summary judgment for insurer on breach of contract claim, given insurance policy exclusion facially denied coverage); *1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1020–21 (Ct. App. 2006) ("The failure of [a policy's] conditions precedent is a complete defense to [an insured's] breach of contract claim.") (affirming summary judgment for insurer).

Here, under the Policy's clear terms, Pez can plead neither "benefits due" nor "actual withholding." *Love*, 221 Cal. App. 3d at 1151 n.10 (quotation marks and emphasis omitted). Because Pez is not entitled to coverage under the Policy as a matter of law, "there is no breach of contract" and its claim must be dismissed. *Id.* (quotation marks and emphasis omitted).

Plaintiff's failure to establish coverage necessarily forecloses its claims for damages and interest (the sixth, seventh, and eighth reliefs requested). An implied duty of good faith and fair dealing "is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *McKnight v. Torres*, 563 F.3d 890, 893 (9th Cir. 2009) (quotation marks omitted).

Given that Plaintiff's substantive claims are without merit, attorneys' fees and costs of suit are likewise unavailable (eleventh relief sought). *Boza v. U.S. Bank Nat'l Ass'n*, No. LA CV12-06993 JAK, 2013 WL 5943160, at *4 (C.D. Cal. Oct. 28, 2013)

Gibson, Dunn &
Crutcher LLP

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss                    19

1   ("[I]n determining whether attorney's fees are warranted in the first instance, the

2   predicate is the prior decision that a court made on the merits of one or more

3   substantive claims as to which a fee award may be granted.").

4       **F.**    **Dismissal of the Third Cause of Action for Breach of the Implied**

5              **Covenant of Good Faith and Fair Dealing Is Proper Because Pez Is**

6              **Not Entitled to Coverage as a Matter of Law**

7         To establish a claim for breach of the implied covenant of good faith and fair

8   dealing a plaintiff must show, "(1) *benefits due under the policy* were withheld; and

9   (2) the reason for withholding benefits was unreasonable or without probable cause."

10  *Sekera v. Allstate Ins. Co.*, 763 F. App'x 629, 630 (9th Cir. 2019) (emphasis added)

11  (quoting *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 823 (9th Cir.

12  2014)).  The "threshold requirement" in such a claim is that insurance coverage exists

13  under the plaintiff's policy.  *Love*, 221 Cal. App. 3d at 1152.  Thus, a bad faith claim

14  "cannot be maintained unless policy benefits are due under the contract."  *Waller v.*

15  *Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 35 (Cal. 1995); *see, e.g.*, *Minich v. Allstate Ins.*

16  *Co.*, 193 Cal. App. 4th 477, 493 (Ct. App. 2011) ("[The] claim for tortious breach of

17  contract (bad faith) fails as a matter of law because [the insurer] did not breach the

18  Policy[.]" (italics omitted)); *Brown v. Mid-Century Ins. Co.*, 215 Cal. App. 4th 841,

19  858 (Ct. App. 2013) ("Because the policy did not cover the [insureds'] claims,

20  however, the [insureds] do not have a claim for breach of the implied covenant of good

21  faith and fair dealing.").

22        Applying this well-established California law, district courts routinely dismiss

23  claims for breach of the implied covenant of good faith and fair dealing when

24  plaintiffs' allegations of coverage under their policies fail to state a claim.  *See Sigma*

25  *Fin. Corp. v. Gotham Ins. Co.*, No. SACV 15-01531 AG, 2017 WL 9511732, at *2

26  (C.D. Cal. Mar. 31, 2017) (granting motion to dismiss with prejudice when the insurer

27  "didn't breach the excess-liability insurance contract, so it follows that [the insured]

28

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

20

can't possibly recover for breach of the implied covenant of good faith and fair dealing"); *O'Keefe v. Allstate Indem. Co.*, 953 F. Supp. 2d 1111, 1116 (S.D. Cal. 2013) ("Because [plaintiffs] cannot sue for bad faith without proving that benefits were withheld under the policy 'as written,' and because [plaintiffs] cannot establish that coverage existed under the express terms of the contract, there is no cause of action for breach of the implied covenant of good faith and fair dealing."); *Moss v. Infinity Ins. Co.*, No. 15-CV-03456-JSC, 2015 WL 7351395, at *5 (N.D. Cal. Nov. 20, 2015) (dismissing implied covenant claim when the policy "excluded from coverage the particular situation for which Plaintiff sought benefits"). Here, because Pez is not entitled to coverage under the Policy as a matter of law, its claim for bad faith breach of the implied covenant of good faith and fair dealing must be dismissed.

## V.   CONCLUSION

For all of the reasons stated above, Plaintiff has failed to state any claim upon which relief must be granted. Thus, Travelers respectfully requests that the Court dismiss the FAC with prejudice under Federal Rule of Civil Procedure 12(b)(6).[10]

Dated: June 3, 2020

GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Richard J. Doren*
Richard J. Doren, SBN 124666
     rdoren@gibsondunn.com
Theodore J. Boutrous Jr., SBN 132099
     tboutrous@gibsondunn.com
Deborah L. Stein, SBN 224570
     dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fac.: 213.229.7520

---

[10]  Travelers notes that some policyholders have petitioned for the creation of an industry-wide COVID-19 business interruption insurance MDL. To the best of Travelers' knowledge, Plaintiff here has not sought to be part of that MDL. Moreover, the hearing on the MDL petition is not scheduled until July 30.

Gibson, Dunn &
Crutcher LLP

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Defendant Travelers Property*
*Casualty Company of America (erroneously*
*named as The Travelers Indemnity Company*

Of Counsel:

ROBINSON & COLE LLP
Stephen E. Goldman (*pro hac vice* forthcoming)
    sgoldman@rc.com
Wystan M. Ackerman (*pro hac vice* forthcoming)
    wackerman@rc.com
280 Trumbull Street
Hartford, CT 06103
Tel.: 860.275.8200
Fac.: 860.275.8299

Defendant Travelers Property Casualty Company of
America's Memorandum of Points and Authorities in
Support of Motion to Dismiss

22