UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
| Title | *Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.* | Page | 1 of 12 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MOTION TO DISMISS [12]**

Before the Court is the Motion to Dismiss ("MTD") filed by Defendant Travelers Property Casualty Company of America (erroneously sued as The Travelers Indemnity Company) ("Travelers"). [Doc. # 12.] Plaintiff Pez Seafood DTLA, LLC filed a First Amended Complaint ("FAC") in Los Angeles County Superior Court on May 20, 2020 against Defendants Travelers, Muntu Davis, and Does 1-25, bringing the following causes of action: (1) declaratory relief, (2) breach of contract, and (3) breach of the implied covenant of good faith and fair dealing. [Doc. # 1-2.] On May 27, 2020, Travelers removed the action to this Court on the basis of diversity jurisdiction. [Doc. # 1.]

On June 3, 2020, Travelers filed the instant MTD. The motion has since been fully briefed. Opp. [Doc. # 30]; Reply [Doc. # 33]. While the motion was under submission, the parties filed numerous notices of supplemental authority, all of which have been considered. [Doc. ## 32, 37, 40, 42-51.] Having duly considered the parties' written submissions, the Court **GRANTS** Travelers' MTD with prejudice.

**I.
JUDICIAL NOTICE**

In support of its Opposition, Plaintiff seeks judicial notice of: (1) correspondence between Travelers and the Department of Insurance related to a March 8, 2007 Application for Approval of Insurance Rates; (2) Travelers Casualty Insurance Company of America's Answer to an Amended Complaint in *Natty Greene's Brewing Co., LLC v. Traveler's Casualty Insurance Co.*, No. 1:20-cv-00437 (M.D.N.C. May 15, 2020), ECF No. 40; and (3) a Resolution of the Los Angeles County Board of Supervisors adopted on April 14, 2020. Request for Judicial Notice ("RJN") [Doc. # 31].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
| Title | *Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.* | Page | 2 of 12 |

Federal Rule of Evidence 201 permits a court to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may take notice of government documents obtained from reliable sources. *See U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017); *Reyn's Pasta Bella, LLC v. Visa USA*, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take notice of matters of public record); *Retired Emps. Ass'n of Orange Cty., Inc. v. County of Orange*, 632 F. Supp. 2d 983, 985 (C.D. Cal. 2009), *remanded to* No. SACV 07-1301 AG (MLGx), 2012 WL 12950389 (C.D. Cal. Aug. 13, 2012) (taking judicial notice of a county board resolution).

The Court **GRANTS** the RJN as to all three documents.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff owns, operates, manages, and/or controls the restaurant Pez Cantina, located in Los Angeles. FAC at ¶ 1. Travelers issued an insurance policy, Policy No. 680-9M304995-20-42, for Plaintiff's property for the period of January 29, 2020 to January 29, 2021. *Id.* at ¶ 2; FAC, Ex. 1 (Policy) [Doc. # 1-2]. The Policy states, in pertinent part:

> a. Business Income
>
> . . .
>
> (2) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> . . .
>
> 7. Coverage Extensions
>
> . . .
>
> g. Civil Authority
>
> (1) When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you

---

[1] The Court assumes the truth of the Complaint's factual allegations solely for the purpose of deciding Defendants' motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
| Title | *Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.* | Page | 3 of 12 |

> incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss.
> . . .
> EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA
> . . .
> B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

Policy at 131–32, 144, 298.[2] The Policy also provides coverage for "the reasonable expenses you incur in preparing claim data when we require such data to show the extent of loss." *Id.* at 134.

On March 15, 2020, Los Angeles Mayor Eric Garcetti issued an order prohibiting restaurants from providing dine-in food service in light of the COVID-19 pandemic. FAC at ¶ 22; FAC, Ex. 2 ("Garcetti Order") [Doc. # 1-2]. The Garcetti Order permits restaurants "to operate for purposes of preparing and offering food to customers via delivery service, to be picked up or for drive-thru." Garcetti Order at 412. On March 16, Health Officer of Los Angeles County, Defendant Muntu Davis, issued an order prohibiting gatherings held indoors or outdoors in confined spaces. FAC at ¶ 25; FAC, Ex. 5 ("Los Angeles Order") [Doc. # 1-2]. On March 19, Mayor Garcetti issued a revised order mandating all residents to stay at home and requiring "all businesses" with in-person workforces to "cease operations," with certain exemptions, including for take-out, delivery, and drive-thru food service. FAC at ¶ 23; FAC, Ex. 3 ("Safer at Home Order") at 416, 419 [Doc. # 1-2]. The Safer at Home Order also noted that COVID-19 "is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time." *Id.* at 415. On April 10, Mayor Garcetti extended the Safer at Home Order to be effective until May 15, 2020. FAC at ¶ 24; FAC, Ex. 4 ("Extension Order," collectively with the Garcetti Order, Los Angeles Order, and Safer at Home Order, the "Orders") [Doc. #1-2].

Plaintiff completely shut down its business operations. FAC at ¶ 27. Plaintiff alleges it has sustained an actual loss of business income due to the suspension of business. *Id.* at ¶ 28.

---

[2] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
| Title | *Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.* | Page | 4 of 12 |

On April 20, 2020, Plaintiff filed its Complaint in Los Angeles County Superior Court, seeking declaratory relief. [Doc. # 1-3]. On April 30, Travelers denied Plaintiff's claim for coverage. FAC at ¶ 30; FAC, Ex. 6. On May 20, Plaintiff filed its FAC, adding causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Travelers removed the action to this Court on May 27, and the Court denied Plaintiff's Motion to Remand on August 4, finding that no abstention doctrines warranted removal and that the parties were diverse, based on Defendant Muntu Davis having been fraudulently joined. [Doc. ## 1, 34.] On August 13, Plaintiff and Davis stipulated to dismiss Plaintiff's cause of action against Davis without prejudice, which the Court approved. [Doc. ## 39, 40.]

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) states that a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). On a motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

## IV.
## DISCUSSION

Plaintiff bases its claims on the assertion that Travelers improperly denied coverage. Travelers argues that Plaintiff is not entitled to coverage because it cannot allege: (1) "direct physical loss of or damage to property," (2) that an action of civil authority "prohibit[ed] access" to the insured property, and (3) that the losses were caused by a "Covered Cause of Loss,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
| Title | ***Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.*** | Page | 5 of 12 |

because COVID-19 is excluded under the "Virus Exclusion." Travelers further argues that Plaintiff did not allege that Travelers requested claim data, and so Plaintiff is not entitled to claim data coverage.

### A.     Insurance Policy Interpretation Principles

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). Interpretation of an insurance policy is a matter of law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). A court must look to "the mutual intention of the parties at the time the contract is formed," and that "intent is to be inferred, if possible, solely from the written provisions of the contract." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (1995). In other words, "[i]f the meaning a layperson would ascribe to the language of a contract of insurance is clear and unambiguous, a court will apply that meaning." *Id.* at 666–67. When the language of a contract is ambiguous, it "must be construed in favor of coverage that a lay policyholder would reasonably expect." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 319 (2010); Cal. Civ. Code § 1649.

The Policy covers all risks of direct physical loss, except those expressly limited or excluded. Policy at 132–33. Before considering whether any policy exclusions apply, the Court must first determine whether affirmative coverage exists at all. *Rosen v. Nations Title Ins. Co.*, 56 Cal. App. 4th 1489, 1497 (1997). "[T]he burden is on the insured to bring the claim within the basic scope of coverage, and (unlike exclusions) courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage." *Id.* (internal quotation marks and citation omitted). Accordingly, Plaintiff bears the initial burden of proving that its losses fall within the scope of the Policy's coverage. *See id.*; *see also Waller*, 11 Cal. 4th at 16.

### B.     Direct Physical Loss

Plaintiff alleges that it is entitled to coverage for the loss of business income due to the interruption of its business operations caused by the Orders. FAC at ¶¶ 27–28. A "direct physical loss of or damage to property" is necessary to trigger coverage. Policy at 132. Plaintiff maintains that it suffered a "direct physical loss" to its property because the Orders prohibited it from allowing customers to dine in its restaurant. Opp. at 14.

Plaintiff argues that even though the restaurant was not physically damaged, the Court should adopt the definition of "loss of" stated in *Total Intermodal Services Inc. v. Travelers*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
| Title | ***Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.*** | Page | 6 of 12 |

*Property Casualty Co. of America*, No. CV 17-04908 AB (KSx), 2018 WL 3829767 (C.D. Cal. July 11, 2018). There, the court held that the phrase "'*loss of*' property contemplates that the property is misplaced and unrecoverable, without regard to whether it was damaged." *Id.* at *3. The plaintiff's "loss" was a shipment of parts that was mistakenly returned to China. *Id.* at *1. Here though, Plaintiff's property was not misplaced or unrecoverable—the restaurant remained physically present and within Plaintiff's possession. Rather, Plaintiff alleges a loss stemming from an inability of the property to be used for one of its core functions—dine-in food service.

Courts have consistently held that in order for a loss of functionality to constitute a "direct physical loss," there must be a nexus between the loss and a physical change or effect on or near the premises. For example, in *Pentair, Inc. v. American Guarantee & Liability Insurance Co.*, 400 F.3d 613 (8th Cir. 2005), an earthquake affecting a power plant led to a loss of electricity to the insured property. *Id.* at 614. The court refused to adopt the plaintiff's argument that "mere loss of use or function" can trigger coverage when there is no injury other than the cessation of operations. *Id.* at 616. The court noted that, "although electric power has a 'physical' element," the plaintiff's definition "would mean that direct physical loss or damage is established *whenever* property cannot be used for its intended purpose." *Id.* Similarly, in controlling precedent, the California Court of Appeal found that in the case of a data loss, the mere "loss of organized information" did not amount to a loss of tangible property and therefore could not trigger coverage for a "direct physical loss." *Ward Gen. Ins. Servs., Inc. v. Emp'r Fire Ins. Co.*, 114 Cal. App. 4th 548, 556–57 (2003); *see also MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.,* 187 Cal. App. 4th 766, 780 (2010) ("For there to be a 'loss' within the meaning of the policy, some *external force* must have acted upon the insured property to cause a *physical change* in the condition of the property.").

Courts that have found a direct physical loss without physical damage are consistent with the principle that there still must be some physical intrusion that compromises the physical integrity of property. *See, e.g.*, *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709–10 (E.D. Va. 2010) (toxic gasses released by drywall made the home inhabitable); *W. Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 38–39 (1968) (*en banc*) (gasoline accumulation saturated the insured property, making use of the building "highly dangerous"); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12–cv–04418 (WHW)(CLW), 2014 WL 6675934, at *7 (D.N.J. Nov. 25, 2014) (ammonia discharge "produced an actual change in the content of the air," making the plaintiff's facility unsatisfactory and in need of repair); *Nat. Ink & Stitch, LLC v. State Auto Prop. & Cas. Ins. Co.*, 435 F. Supp. 3d 679, 686 (D. Md. 2020) (computer virus attack left the plaintiff with a slower system, appearing to contain a dormant virus).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
|---|---|---|---|
| Title | ***Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.*** | Page | 7 of 12 |

Two recent cases neatly illustrate how this doctrine applies in the context of COVID-19-related government shutdown orders. In *Rose's 1 LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020), the D.C. Superior Court found that even if "loss of use" constituted a direct physical loss, the loss must be caused "by something pertaining to matter—in other words, a direct physical intrusion on to the insured property." *Id.* at *3. Because the plaintiffs failed to allege that COVID-19 was physically present on the insured properties at the time they were forced to close, the court held that there was no direct physical loss. *Id.*

By contrast, in *Studio 417, Inc. v. The Cincinnati Insurance Co.*, --- F. Supp. 3d ---, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), the court found that the plaintiffs, operators of hair salons and restaurants, adequately stated a claim for direct physical loss because they alleged that "it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus." *Id.* at *2, 4. Because COVID-19 allegedly attached to the plaintiffs' property, they were able to establish a direct physical loss. *Id.* at *4.

Read together, *Rose's 1* and *Studio 417* stand for the proposition that the COVID-19 virus physically attaching to or entering the insured property would constitute a "direct physical loss," whereas preventative measures enacted without the virus having actually been inside or upon the premises would not. In *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020), the court recently reached the same conclusion, applying California law:

> [Plaintiff] does not allege that "Covid-19 entered the [property] through any employee or customer." Rather than alleging that COVID-19 or any other physical impetus caused the loss of functionality of its storefront, Mudpie alleges that its "loss is caused by government closure orders and thus will last for however long those restrictions remain." Because [Plaintiff's] complaint contains no allegations of a physical force which "induced a detrimental change in the property's capabilities," the Court finds that [Plaintiff] has failed to establish a "direct physical loss of property" under its insurance policy.

*Id.* at *5 (citations omitted).[3] *See also Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 835–36 (8th Cir. 2006) (holding that a government embargo prohibiting the importation of beef to prevent mad cow disease was not a direct physical loss where the

---
[3] In a footnote, the *Mudpie* court noted that "[h]ad [Plaintiff] alleged the presence of COVID-19 in its store, the Court's conclusion about an intervening physical force would be different." 2020 WL 5525171, at *5 n.7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
|---|---|---|---|
| Title | *Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.* | Page | 8 of 12 |

plaintiff's beef was not actually contaminated). This analysis aligns with established principles on the interpretation of "direct physical loss" under California law, and the Court finds it persuasive.

Here, Plaintiff does not allege that COVID-19 has entered or attached to the insured property. Indeed, Plaintiff confirms in its Opposition that the virus is not alleged to have been on the property. Opp. at 15. Therefore, it has not alleged a "direct physical loss or damage to property."[4]

**C.     Civil Authority**

Plaintiff contends that the Civil Authority provision of the Policy provides coverage as an extension of the Business Income provision. In order to obtain coverage under the Civil Authority provision, the loss of business income must: (1) be caused by an action of civil authority, (2) the action of civil authority must "prohibit access" to the insured property, (3) the action of civil authority must be caused by direct physical loss of or damage to property at locations within 100 miles, and (4) the loss of or damage to property must be caused by a "Covered Cause of Loss." Policy at 144.

Here, the direct physical loss need not be to the insured property, but to any property *within 100 miles*. The Orders make clear that the coronavirus had been spreading rapidly throughout Los Angeles. Although Plaintiff failed to allege the virus entered its own property, the Court can reasonably infer that the virus entered property within 100 miles of the restaurant, which, as discussed above, constitutes a direct physical loss. And at this procedural posture, the Court must also accept as true that the Orders were caused, at least in part, by these losses: "This Order is given because, among other reasons, the COVID-19 virus . . . is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time." Safer at Home Order at 415.

Travelers argues that the Orders do not "prohibit access" to the property because they allow the restaurant to continue take-out and delivery service, and because they do not formally forbid any access to the premises. MTD at 19. In doing so, Travelers relies on a line of cases arising from government orders following the 9/11 attacks, including *S. Hosp., Inc. v. Zurich Am.*

---

[4] Aside from case law, Plaintiff refers to a Resolution of the Los Angeles County Board of Supervisors, which declared "that the physical loss of and damage to businesses is resulting from the shutdown and that these businesses have lost the use of their property and are not functioning as intended." Resolution at 7. No matter what the County thinks causes physical loss or damage, the Resolution does not reflect the parties' intent at the time of contracting. The Resolution was issued after the Policy was executed, and the County is not a party to the contract.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
|---|---|---|---|
| Title | *Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.* | Page | 9 of 12 |

*Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004). There, the court found that while the FAA's order grounding planes may have prevented intended guests from traveling, it did not specifically prohibit individuals from accessing the plaintiff's hotel. *Id.* at 1139–40. The court held that there must be a "direct nexus" between the civil authority order and the suspension of the business. *Id.* at 1141. Similarly, the FAA's order also did not directly prohibit access to airport parking garages, even though it resulted in a "severe reduction" in business. *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005). And an order closing streets in Lower Manhattan to vehicle access—but not to pedestrians—did not directly prohibit access to an office building. *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 336–37 (S.D.N.Y. 2004).

Travelers also points to *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94–0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995), a California case involving a dawn-to-dusk curfew imposed to prevent riots following the verdict in the Rodney King case. Because no individual's ability to enter the plaintiff's theater was "specifically denied," the curfew did not amount to a prohibition of access that would trigger coverage. *Id.* at *2.

The common thread running through these cases is that the civil authority orders did not directly and explicitly forbid access to any part of the insured properties. Although they had the incidental effect of severely reducing business or making it extremely difficult for would-be patrons to visit, they did not *specifically deny* any individual access to any part of the premises. But in the present case, dine-in restaurants are specifically called out for closure, with limited exceptions for take-out, delivery, or drive-thru service. Garcetti Order at 412 ("All restaurants and retail food facilities in the City of Los Angeles shall be prohibited from serving food for consumption on premises."); Safer at Home Order at 416 (requiring "all businesses" with in-person workforces to "cease operations," with certain exemptions for to-go food service). Plaintiff's dining room was not practically induced to close by a severe hindrance on operations, it was specifically ordered to do so. In other words, there was a "direct nexus" between the Orders and the cessation of the restaurant's dine-in service. *See S. Hosp.*, 393 F.3d at 1141.[5]

In a more factually analogous case decided at the same procedural stage, the court in *Studio 417* found that where civil orders closed restaurants to in-person dining due to COVID-19, the plaintiff plausibly alleged a prohibition of access. 2020 WL 4692385 at *7. This Court agrees. Although Plaintiff's restaurant was still accessible for take-out, and its employees were still allowed to enter, customers were clearly prohibited from accessing the dining room. The

---

[5] There may not be a direct nexus between the Orders and the complete closure of the establishment, however, because the Orders do allow the restaurant to remain open for take-out. But Plaintiff theoretically could establish coverage for the loss of its income from dine-in service, if not for the entire business's income.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
| Title | *Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.* | Page | 10 of 12 |

Policy does not specify whether "prohibits access" means the entire property must be closed off to all persons, or whether denying access to *some* of the premises to *some* people would be enough. On this point, the Policy is ambiguous. *See id.* Construing it in favor of the insured, Plaintiff has sufficiently alleged that the Orders prohibited access to the property.

Therefore, the Civil Authority provision would provide coverage so long as the direct physical loss that led to the Orders was caused by a "Covered Cause of Loss."

**D.      Virus Exclusion**

"Covered Causes of Loss" are defined as "risks of direct physical loss" unless subject to a limitation or exclusion. Policy at 132–33. Travelers argues that the Virus Exclusion bars Plaintiff from coverage because the relevant losses were caused by the coronavirus, which is "a virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease," within the clear meaning of the exclusion. *Id.* at 298.

Plaintiff offers two alternative causes of loss, other than the virus itself, that it argues would not be subject to any exclusion: 1) the City's Orders, and 2) concerns for public health in light of a global pandemic generally, irrespective of the virus's direct effect on property. Opp. at 20–21.

Plaintiff's first theory would render the Civil Authority provision nonsensical. If an act of civil authority could be a "Covered Cause of Loss," the result would be a circular logic in which the Orders (as a Covered Cause of Loss) caused direct physical loss of or damage to properties, which caused the Orders (an action of civil authority). As for the second alternative, even if the COVID-19 pandemic could be distinguished from the physical virus, by definition a virus that specifically has *not* entered any property cannot cause a "direct physical loss." Coverage depends on the virus having physically entered either the insured property or a property within 100 miles, as discussed above. If Plaintiff attempts to construe the Orders as being caused by the threat of a virus that has not actually entered any property yet, then there would be no direct physical loss. Plaintiff cannot have it both ways.

Moreover, whether framed as a response to a general public health threat in the form of a global pandemic, or to a specific viral intrusion, Plaintiff cannot escape that a virus is the root cause of the Orders. "Pandemic" merely describes the geographical scope and effect of the virus on the population. Whether a global pandemic or a single infection, the Virus Exclusion clearly and unambiguously applies, as courts applying similar virus exclusions to COVID-19 have consistently found. *See Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos,* No. CV 20-3619

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-4699-DMG (GJSx)** | Date | January 20, 2021 |
|---|---|---|---|
| Title | *Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.* | Page | 11 of 12 |

PSG (Ex), 2020 WL 6156584, at *4 (C.D. Cal. Oct. 19, 2020) (collecting cases); *see also* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense"); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992) ("If contractual language is clear and explicit, it governs.").[6]

In sum, the Virus Exclusion precludes Plaintiff's claim for losses under the Civil Authority and Business Income provisions.

**E.     Claim Data**

Plaintiff seeks "a declaration that claim expense coverage is available in the amount of $25,000 for making a claim under The Policy." FAC at Prayer for Relief. The Policy provides coverage for "the reasonable expenses you incur in preparing claim data when we require such data to show the extent of loss." Policy at 134.

Plaintiff does not allege that Travelers required any data, a fact which it appears to concede in its Opposition. *See* Opp. at 18–19. Plaintiff nevertheless seeks declaratory relief that coverage "is available." Because Plaintiff does not allege facts that create an "actual controversy," 28 U.S.C. § 2201(a), it fails to state a claim for declaratory relief regarding claim data coverage.

**F.     Plaintiff's First Cause of Action for Declaratory Relief**

Plaintiff is not entitled to coverage under the Policy as a matter of law because COVID-19 is not a Covered Cause of Loss. As such, Plaintiff fails to state a claim for declaratory relief to determine: (1) "whether the necessary suspension of Plaintiff's business operations caused by the Orders constitute a direct physical loss as defined in The Policy;" (2) "whether the Orders constitute a prohibition of access to Plaintiff's Insured Premises by a Civil Authority as defined

---

[6] Plaintiff also argues that Travelers is estopped from enforcing the Virus Exclusion due to misrepresentations made to the California Department of Insurance. Opp. at 21–23. Plaintiff asks the Court to consider and take judicial notice of the drafting history of the exclusion. RJN at 2. California courts have not adopted the doctrine of "regulatory estoppel." *See* 1 Barbara O'Donnell, LAW & PRAC. OF INS. COVERAGE LITIG. §§ 1:15–16 (2020). The California Court of Appeal refused to adopt the doctrine when a plaintiff argued that the language of a pollution exclusion was unenforceable because the insurer represented that the intent of the change was not to restrict the scope of coverage. *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1790 (1993). Here, Plaintiff argues that the entire Virus Exclusion is unenforceable. "Whatever else extrinsic evidence may be used for, it may not be used to show that words in contracts mean the exact opposite of their ordinary meaning." *Id.* at 1791. Since the exclusion is unambiguous and Plaintiff's argument would render the entire exclusion meaningless, the Court will not consider the exclusion's drafting history.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 20-4699-DMG (GJSx) | Date | January 20, 2021 |
| Title | *Pez Seafood DTLA, LLC v. The Travelers Indemnity Company, et al.* | Page | 12 of 12 |

in the Policy;" and (3) "whether the Orders trigger coverage under the Policy if Plaintiff can prove that there has been a direct physical loss of or damage to the property." FAC at ¶¶ 35–37. Travelers' Motion to Dismiss the First Cause of Action is **GRANTED**.

### G. Plaintiff's Second and Third Causes of Action for Breach of Contract and Implied Covenant of Good Faith and Fair Dealing Claims

As stated above, Plaintiff is not entitled to coverage under the Policy as a matter of law. Accordingly, Traveler's denial of coverage was not a breach a contract nor a breach of the implied covenant of good faith and fair dealing. *See Ward Gen. Ins. Servs., Inc.*, 114 Cal. App. 4th at 559. Travelers' Motion to Dismiss the Second and Third Causes of Action is **GRANTED**.

### H. Leave to Amend

Under Rule 15(a), leave to amend should be freely given unless amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court may dismiss a complaint without leave to amend if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) (citation and internal quotation marks omitted). Plaintiff cannot establish coverage under the Policy for loss of business income due to COVID-19 or civil authority orders enacted due to COVID-19. Nor is there any reason to allow amendment as to the denial of claim data coverage since Travelers did not require any such data. Thus, the Court finds that amendment would be futile. Leave to amend is therefore **DENIED**.

### V.
### CONCLUSION

In light of the foregoing, Travelers's MTD is **GRANTED** and this action is **dismissed with prejudice**.

**IT IS SO ORDERED**.